UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| CHARLOTTE M. JONES, | ) |  |
|---|---|---|
| Plaintiff | ) |  |
| v. | ) | No. 1:10-cv-179-JAW |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |  |
| Defendant | ) |  |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff last met the insured status requirements of the Social Security Act on September 30, 2007, Finding 1, Record at 12;[2] that she had severe impairments of borderline intellectual functioning, a history of

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] Whereas entitlement to SSD benefits hinges in part on acquisition of insured status, entitlement to SSI benefits does not. *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999) ("In 1972, Congress added a new social security program to provide 'supplemental security income' (called 'SSI') for 'aged, blind and disabled' persons of limited

*(continued on next page)*

bilateral carpal tunnel syndrome, status post left carpal tunnel release surgery in June 2004 and right carpal tunnel release surgery in February 2004, and medial compartment degenerative arthritis of the right knee, status post arthroscopy with partial medial meniscectomy, and nonsevere impairments of diabetes mellitus and mild to moderate depression with anxiety, Finding 3, *id.* at 12-13; that she retained the residual functional capacity ("RFC") to perform a somewhat limited range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and walk, with normal breaks, for about six hours in an eight-hour workday provided that she did not stand continuously for more than one hour at a time, could sit, with normal breaks, for about six hours in an eight-hour workday, required the opportunity to change positions from time to time for relief of discomfort, and could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl, Finding 5, *id.* at 20-21; that, considering her age (born on January 27, 1961), education (high school graduate equivalency diploma), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 24; and that she, therefore, had not been under a disability from October 19, 2002 (her alleged onset date of disability), through the date of the decision (May 29, 2008), Finding 11, *id.* at 25. The Appeals Council declined to review the decision, *id.* at 1-4, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

---

means regardless of their insured status. This is a social welfare program funded out of general taxpayer revenues. SSI is available even to those who qualify for SSD, but SSD income is considered in determining whether a disabled person qualifies for SSI under the latter's means test.") (citations omitted); *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) (rec. dec., *aff'd* Dec. 20, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured (March 31, 1995); however, eligibility for SSI benefits is not dependent on insured status.").

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff complains that the administrative law judge erred in failing to (i) find severe mental impairments beyond borderline intellectual functioning and (ii) include in his RFC assessment the full panoply of functional limitations stemming from both severe and nonsevere impairments, including mental impairments, diabetes, asthma, and carpal tunnel syndrome. *See* Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 10-1) at 2-8. I find no reversible error and, accordingly, recommend that the court affirm the decision.

### A. Mental Impairments

The administrative law judge found that the plaintiff suffered from well-documented mild to moderate depression with anxiety but that the condition did not meet the requisite continuity and durational criteria in that it had not significantly limited her mental ability to do basic work activities for any continuous period of 12 months or more. *See* Record at 14; *see also* 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."). He reasoned that the objective medical evidence disclosed that the plaintiff experienced only intermittent symptoms from mental impairments apart from borderline intellectual functioning. *See* Record at 16.

In so finding, the administrative law judge erred. "The regulations [20 C.F.R. §§ 404.1509, 416.909] provide that a claimant's *impairment* must have lasted, or be expected to last, for a continuous period of at least 12 months, not his or her *symptoms*." *Iezzi v. Astrue*, Civil No. 09-10-P-S, 2009 WL 3615018, at \*2 (D. Me. Oct. 27, 2009) (rec. dec., *aff'd* Nov. 18, 2009) (emphasis in original). Nonetheless, the error is harmless: the administrative law judge's fundamental finding of the nonseverity of any mental impairment apart from borderline

intellectual functioning is supported by substantial evidence. This evidence, as accurately summarized and relied upon by the administrative law judge, included:

1. The finding of Disability Determination Services ("DDS") examining consultant Edward P. Quinn, Ph.D., in a report dated July 18, 2006, that, although the plaintiff appeared depressed, with a slightly constricted affect and sad facial features, her depressed appearance somewhat abated following Dr. Quinn's evaluation. *See* Record at 15, 229 ("[T]here is a level of drama in [the plaintiff's] presentation and [it] should be noted as she is walking out the door of today's evaluation, she spontaneously appears less depressed.").

2. Dr. Quinn's finding that the plaintiff's thought processes were logical and goal-oriented, her judgment and insight both appeared to be good, and her attention, sustained concentration, and memory all appeared to be within normal limits given her estimated level of intellectual functioning, with her intelligence appearing to be in the low average to borderline range. *See id.* at 15, 229.

3. Equivocation in Dr. Quinn's opinion concerning any social functional restrictions stemming from the plaintiff's mental impairments, *e.g.*, that she *may* have some difficulties relating to others and dealing with stressors and *may* have some difficulties behaving in an emotionally stable manner. *See id.* at 15-16, 230.

4. A July 24, 2006, opinion of DDS nonexamining consultant Lewis F. Lester, Ph.D., crafted with the benefit of review of the Quinn report, that the plaintiff had no severe mental impairment. *See id.* at 15, 245, 247.

5. Mental health treatment records for the period through December 2007 indicating, despite the presence of global assessment of functioning ("GAF") scores consistently as low as

45, denoting serious symptoms, that the plaintiff's mood was good, she appeared happy, friendly, and interactive, and her thoughts were organized. *See id*. at 16, 422, 426, 428, 433.[3]

In addition, and although not mentioned by the administrative law judge, a second DDS nonexamining reviewer, John J. Warren, Ed.D., affirmed the findings of Dr. Lester in a case analysis dated December 29, 2006, noting that although the plaintiff had alleged worsening of her mental condition in seeking reconsideration of an initial denial of her application, new evidence from the Kennebec Valley Mental Health Center ("KVMHC") showed that she remained under psychiatric treatment with an improved and stable condition, despite some ongoing psychological stressors. *See id*. at 400.

The plaintiff argues that (i) to the extent that the administrative law judge relied on the Lester opinion, his reliance was misplaced, Dr. Lester not having had the benefit of review of a significant volume of subsequent mental health treatment evidence, (ii) to the extent that he relied on Dr. Quinn's report, he overlooked the fact that Dr. Quinn assessed a GAF score of 55, reflective of a severe mental impairment,[4] and (iii) to the extent that he relied on raw medical evidence in the form of treatment notes for the period through December 2007, he failed either to recontact treating providers or obtain the assistance of a medical expert to address the

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) ("DSM-IV-TR"), at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*. at 34 (boldface omitted).
[4] A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id*. (boldface omitted).

discrepancy he perceived between the notes and assessed GAF scores indicative of severe mental impairments. *See* Statement of Errors at 3, 6-7.[5]

"[T]here is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC." *Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011). "Factors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge." *Id.* (citations omitted).

In this case, the administrative law judge supportably minimized the significance of mental health treatment records postdating the Lester opinion. The record reflects that the plaintiff was treated for depression and anxiety without significant complaints of functional difficulties until February 22, 2006, when she complained to treating primary care provider Eric J. Caccamo, D.O., that she was greatly upset and "down in the dumps" in the wake of a breakup with her boyfriend. *See* Record at 278. Dr. Caccamo noted situational depression with anxiety. *See id*. at 279. Through at least August 2006, the plaintiff continued to complain to Dr. Caccamo

---

[5] At oral argument, the plaintiff's counsel also faulted the administrative law judge for crediting portions of the Quinn report unfavorable to his client and discrediting portions that were favorable, such as Dr. Quinn's diagnosis of a personality disorder. He suggested that, if an administrative law judge wishes to rely on a consulting examiner's report, he or she must credit the report *in toto*. Both the First Circuit and this court have declined to impose such an obligation. *See Evangelista v. Secretary of Health & Human Servs.,* 826 F.2d 136, 144 (1st Cir. 1987) ("The basic idea which the claimant hawks – the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case – is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter. Though it is sometimes useful to have such testimony presented, we decline to lay down an ironclad rule that, without it, a judge is powerless to piece together the relevant medical facts from the findings and opinions of multiple physicians."); *Hicks v. Astrue*, Civil No. 09-393-P-S, 2010 WL 2605671, at *4 (D. Me. June 23, 2010) (rec. dec., *aff'd* July 15, 2010) ("[T]he plaintiff characterizes the administrative law judge's choice of medical evidence on which to rely as 'cherry picking,' but that is precisely the role of the administrative law judge. He need not adopt all of any particular provider's report, if he states his reasons for adopting only a portion of it.") (internal punctuation omitted).

of stress, sadness, worsening depression, and crying spells on account of the breakup. *See id*. at 261, 263, 265, 268, 270, 272, 274.

On August 22, 2006, she sought help from KVMHC, citing a number of recent stressors including the February 2006 breakup, and began receiving medication management services from Patricia J. Gagnon, P.A., and counseling from Cynthia Schumacher, L.C.S.W. *See id*. at 388-89, 391. Her GAF score at that time was assessed as 45. *See id*. at 390.

By October 2, 2006, the plaintiff reported that she felt more calm and less tearful. *See id*. at 380. The administrative law judge supportably construed the text of subsequent mental health treatment notes to reflect significant symptomatic improvement despite the ongoing assessment of GAF scores in the 40s. *See, e.g., id*. at 422 (Gagnon note of December 17, 2007, observing that the plaintiff and her therapist "report she is having difficulty with her mood, but my observation is an interactive, friendly client with no evidence of depression"), 426 (Gagnon note of November 19, 2007, describing plaintiff as "friendly, oriented, happy, smiling, interactive" with organized thoughts, though still having some difficulties with insight and judgment), 429 (similar findings, Gagnon note of October 22, 2007), 433 (similar findings, Gagnon note of August 13, 2007), 441 (Gagnon note of June 8, 2007, describing plaintiff as "happy, euthymic, friendly and interactive" with organized thoughts and some cognitive limitations; "This is her baseline."), 449 (Gagnon note of January 22, 2007, describing the plaintiff as neat, oriented, calm, and complaining of poor memory and concentration, although her thoughts appeared organized to Gagnon), 472 (Gagnon note of March 31, 2008, describing the plaintiff as neat and

clean, with euthymic mood, friendly, oriented, and interactive, with organized thoughts, stable mood, and some social stressors mostly related to economic difficulties).[6]

The plaintiff cites Social Security Rulings 96-5p and 96-2p and *Hicks v. Astrue*, Civil No. 09-393-P-S, 2010 WL 2605671 (D. Me. June 23, 2010) (rec. dec., *aff'd* July 15, 2010), for the proposition that the administrative law judge erred in resolving seeming inconsistencies between the Gagnon and Schumacher findings and/or between the Gagnon findings and the assessed GAF scores without contacting treating sources for clarification. *See* Statement of Errors at 6-7. I find no error. Social Security Ruling 96-5p is inapposite. It pertains to medical source opinions on issues reserved to the commissioner, such as an individual's RFC and whether the individual is disabled. *See* Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-5p"), at 123. A GAF score does not fall within that category, and neither Gagnon, Schumacher, nor any other treating source offered an opinion on the plaintiff's RFC or whether she was disabled.

Social Security Ruling 96-2p, by contrast, appears applicable. It pertains to opinions concerning the nature or severity of a claimant's impairment, *see* Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-2p"), at 112, a fair characterization of a GAF score. SSR 96-2p provides, in relevant part:

> [I]n some instances, additional development required by a case – for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings – may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the case record. . . . Ordinarily, development should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed. However, in cases at the administrative law judge (ALJ)

---

[6] The record indicates that Schumacher, rather than Gagnon, assessed GAF scores. *See, e.g.*, Record at 424 (reflecting DSM diagnosis by Schumacher).

> or Appeals Council (AC) level, the ALJ or the AC may need to consult a medical expert to gain more insight into what the clinical signs and laboratory findings signify in order to decide whether a medical opinion is well-supported or whether it is not inconsistent with other substantial evidence in the case record.

*Id.* at 114. As this passage reflects, "the decision to call a medical expert at the hearing is almost always discretionary with the administrative law judge." *Hicks*, 2010 WL 2605671, at *4. I perceive no abuse of that discretion in this case. "[A GAF] score of 49 *could* be consistent with an inability to work, but it is not *necessarily* so." *Pepin v. Astrue*, Civil No. 09-464-P-S, 2010 WL 3361841, at *8 (D. Me. Aug. 24, 2010) (rec. dec., *aff'd* Sept. 16, 2010) (emphasis in original); *see also* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) (GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"). The opinion of Dr. Lester, affirmed by Dr. Warren, together with the progress notes of both Gagnon and Dr. Caccamo, provided substantial evidence of the nonseverity of the plaintiff's mental impairments apart from borderline intellectual functioning, despite GAF scores arguably indicating otherwise. No further record development was required.[7]

### B. Asserted Omissions From RFC Determination

The plaintiff also complains that the administrative law judge omitted to factor into his RFC finding any limitations stemming from two impairments found to be severe, borderline intellectual functioning and carpal tunnel syndrome, as well as from two impairments found nonsevere, depression with anxiety and diabetes mellitus, and one not even taken into

---

[7] The plaintiff correctly observes that administrative law judges, as laypeople, are not qualified to interpret raw data in a medical record. *See* Statement of Errors at 6; *see also, e.g., Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although administrative law judges are not precluded from "rendering common-sense judgments about functional capacity based on medical findings," they are "not qualified to assess residual functional capacity based on a bare medical record"). In this case, however, the administrative law judge could make a permissible common-sense judgment, based on Gagnon's progress notes, that the plaintiff's mental status had not worsened, and even had improved, since Dr. Lester rendered his opinion, later affirmed by Dr. Warren, that her mental impairments were nonsevere.

10

consideration, asthma. *See* Statement of Errors at 7-8. For the reasons that follow, I find no reversible error.

       1.       Mental Impairments. The plaintiff correctly points out that the administrative law judge omitted to factor into his RFC determination any functional limitation flowing from her severe impairment of borderline intellectual functioning. *See id*. at 3, 7; Finding 5, Record at 20-21. Nonetheless, any error in so doing is harmless. The plaintiff suggests that, on account of her borderline intellectual functioning, she should have been found limited to simple work, *see* Statement of Errors at 3, 7, and as a result of her combined mental impairments, whether severe or nonsevere, she should have been recognized to have a need for avoidance of interaction with the public, *see id*. at 7. She points out that the vocational expert present at her hearing found that the addition of these two restrictions ruled out the two jobs on which the administrative law judge ultimately relied, those of parking lot cashier and ticket seller. *See id*. at 7; Record at 24, 57-58.

      The Quinn report does support a limitation to simple work, *see id.* at 230 (plaintiff should "be able to complete simple job instructions"); however, as noted by counsel for the commissioner at oral argument, the vocational expert effectively factored in such a limitation in citing unskilled jobs, *see id*. at 56; *see also, e.g*., Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2010) ("SSR 96-9p"), at 160-61 (the commissioner has defined competitive, remunerative unskilled work as generally entailing the ability to (i) understand, remember, and carry out simple instructions, (ii) make simple work-related decisions, (iii) respond appropriately to supervision, coworkers, and usual work situations, and (iv) deal with routine changes in a routine work setting).

While Dr. Quinn indicated that the plaintiff *might* have some difficulties relating to others due to personality issues and her depression, he did not find a need to avoid interaction with the public. *See* Record at 230. Neither Dr. Lester nor Dr. Warren, both of whom had the benefit of review of the Quinn report, noted a need to avoid interaction with the public, *see id*. at 247, 400, and the plaintiff points to no record evidence supporting such a need. The administrative law judge accordingly committed no error in omitting such a restriction from his RFC determination.

2. <u>Diabetes Mellitus</u>. The plaintiff faults the administrative law judge for failing to factor in fatigue from diabetes mellitus, a condition that he deemed nonsevere. *See* Statement of Errors at 7. Nonetheless, she fails either to identify any record support for a finding that her diabetes caused fatigue or to explain how such a finding would have made a material difference at Step 5. She accordingly fails to carry her burden of identifying any reversible error with respect to this condition.[8]

3. <u>Asthma</u>. The plaintiff complains that the administrative law judge failed to factor in environmental limitations stemming from asthma. *See* Statement of Errors at 5, 7-8. Nonetheless, she concedes that she did not raise any claim of limitation from asthma prior to her hearing, *see id*. at 5, and her failure to do so effectively waived that claim, *see, e.g., Faria v. Commissioner of Soc. Sec*., No. 97-2421, 1998 WL 1085810, at *1 (1st Cir. Oct. 2, 1998) ("When a claimant is represented, the ALJ[] should ordinarily be entitled to rely on claimant's

---

[8] The plaintiff also argues that the *Appeals Council* erred in failing to take into account medical records submitted in the wake of the administrative law judge's adverse decision that she contends revealed that her diabetes was uncontrolled and that, as of February 27, 2009, she complained of fatigue. *See* Statement of Errors at 4-5; Record at 482, 534. As noted by counsel for the commissioner at oral argument, evidence submitted for the first time to the Appeals Council, and admitted and taken into consideration by that body, does not supply a basis for remand unless a claimant demonstrates that the Appeals Council has given an "egregiously mistaken ground" for its action in refusing review in the face of such late-tendered evidence. *Mills v. Apfel*, 244 F.3d at 1, 5-6 (1st Cir. 2001). The plaintiff does not invoke that basis for remand. *See* Statement of Errors at 4-5. In any event, her complaint of fatigue on February 27, 2009, *see* Record at 482, does not bear on her condition as of the relevant time frames: through September 30, 2007, her date last insured, for purposes of SSD, and through May 29, 2008, the date of the administrative law judge's decision, for purposes of SSI.

counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored.") (citations and internal quotation marks omitted). In any event, as counsel for the commissioner noted at oral argument, any error in failing to consider the plaintiff's asthma was harmless. The record contains substantial evidence, in the form of the report of DDS examining consultant Robert Charkowick, D.O., and the physical RFC opinion of nonexamining DDS consultant Richard T. Chamberlin, M.D., that the plaintiff's asthma caused no functional restrictions. *See* Record at 231, 233, 253-56. Furthermore, the plaintiff acknowledges that there is no vocational expert evidence indicating that asthma-related limitations would have precluded either of the jobs on which the administrative law judge relied. *See* Statement of Errors at 7-8. Thus, she fails to demonstrate entitlement to reversal and remand on this basis. *See Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

4. <u>Carpal Tunnel Syndrome</u>. The plaintiff finally complains that the administrative law judge failed to include in his RFC finding any upper extremity restrictions flowing from her carpal tunnel syndrome. *See* Statement of Errors at 8. She assumes that bilateral upper extremity restrictions would have ruled out the two jobs on which the administrative law judge relied, asserting that the administrative law judge, rather than her counsel, was responsible for querying the vocational expert on that point. *See id*. The omission of bilateral upper extremity restrictions was supported by substantial evidence. No such restrictions were found by Dr. Charkowick, who examined the plaintiff on July 18, 2006, or by two nonexamining DDS consultants, Dr. Chamberlin, who completed a physical RFC assessment dated July 24, 2006, and Donald Trumbull, M.D., who completed a physical RFC assessment dated November 28,

2006.  *See* Record at 231-34, 249-56, 392-99.  In any event, the plaintiff cites no authority for the proposition that it was the duty of the administrative law judge, as opposed to that of her own counsel, to develop the record on the question of whether, if such restrictions had been found, they would have precluded the jobs on which he relied.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of March, 2011.

>              /s/  John H. Rich III
>              John H. Rich III
>              United States Magistrate Judge